UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MIGUEL RUALES,

    Plaintiff,

v.

SPENCER SAVINGS BANK,

    Defendant.

Civ. No. 18-9192 (KM) (MAH)

**MEMORANDUM OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Miguel Ruales brings this action *pro se* against Spencer Savings Bank ("SSB" or "the Bank"). According to the Amended Complaint,[1] the Bank closed Mr. Ruales's checking account without properly communicating to him the reasons for doing so. Plaintiff claims that this conduct amounted to negligence and a violation of his civil rights under 42 U.S.C. § 1983. Defendant moved to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons explained in this opinion, I will dismiss the Amended Complaint on Rule 12(b)(6) grounds.

I.    **SUMMARY OF ALLEGATIONS**

   a. **Factual Background**

For purposes of a Rule 12(b)(6) motion, the allegations of the Amended Complaint are assumed to be true. *See* Section II.A, *infra*.

---

[1]    For ease of reference, certain items from the record will be abbreviated as follows:

    "DE __" =    Docket Entry in this case
    "AC" =    Amended Complaint (DE 7)

1

Mr. Ruales is a citizen domiciled in New Jersey. (AC ¶ 13). SSB is a mutual savings and loan association chartered pursuant to the New Jersey Saving and Loan Act. (*Id.* ¶¶ 14-17). It operates in and has its principal place of business in New Jersey. (*Id.* ¶¶ 14-17). The Bank is alleged to be subject to the supervision of the New Jersey Department of Banking and Insurance. (*Id.*). Mr. Ruales had a noncommercial bank account with SSB. (*Id.* ¶ 21).

On August 9, 2017, the Bank mailed Mr. Ruales a one-page letter informing him that it would be closing his SSB checking account on September 9, 2017. (AC ¶ 2). That letter did not include the reason his account was being closed, and the Bank refused to tell Mr. Ruales why it closed his account. (*Id.* ¶¶ 5, 23, 24, 33). The lack of any explanation led "certain parties to speculate" that Mr. Ruales had engaged in money-laundering activities. (*Id.* ¶¶ 6, 10). Mr. Ruales alleges that he did not engage in money-laundering activities and had "an unblemished" relationship with the Bank. (*Id.* ¶¶ 7, 9).

Plaintiff asserts that the Bank violated a duty in not providing him with an explanation as to why his account was terminated. (*Id.* ¶¶ 7, 9, 19, 20). The account closure allegedly impaired his credit rating, jeopardized his ability to obtain credit in the future, and caused him to bounce checks. (*Id.* ¶ 12).

Prior to the account closure, Mr. Ruales "was very satisfied with the excellent services provided to him" by the Bank. (*Id.* ¶ 21). During that time, no SSB representative informed Mr. Ruales of any problems with his account or banking practices, and he did not engage in any criminal activity. (*Id.* ¶¶ 22, 26). Consequently, according to Mr. Ruales, there was "no need to generate any Suspicious Activity Reports [(hereinafter, "SAR")] in connection with activity in his account." (*Id.*).

### b. Procedural Background

Plaintiff filed the original complaint on May 14, 2018. (DE 1). Defendant filed a motion to dismiss the original complaint on June 11, 2018. (DE 5). On June 12, 2018, Plaintiff filed the currently operative Amended Complaint, which contains two counts. (DE 7). Count 1 of the Amended Complaint asserts

2

a claim of negligence; Count 2 asserts a civil rights claim under 42 U.S.C. § 1983.

On July 31, 2018, Plaintiff filed a request for default on the basis that Defendant had not answered the Amended Complaint. (DE 9). On August 9, 2018, Defendant filed a motion to vacate default and to dismiss the Amended Complaint. (DE 10). Because the clerk had not entered default, the portion of defendant's motion that seeks to vacate default was terminated. (DE 19).

What remains is Defendant's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (DE 10) For the reasons stated below, I will dismiss the Amended Complaint without prejudice.

## II. ANALYSIS

### A. Legal Standard

The Bank has moved to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of [his or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*,

3

712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where a plaintiff, like Mr. Ruales, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *see also Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).[2]

### B. Negligence (Count 1)

To state a claim for negligence, a plaintiff must allege the following four elements: "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Jovic v. Legal Sea Foods, LLC*, No. 16-01586, 2018 WL 5077900, at *2 (D.N.J. Oct. 18, 2018) (quoting *Fernandes v. DAR Dev. Corp.*, 222 N.J. 390, 403-04

---

[2] The defendant also moves to dismiss under Fed. R. Civ. P. 12(b)(1), which governs jurisdictional challenges to a complaint. Because the Amended Complaint at least purports to invoke federal law, I exercise my discretion to consider first whether any federal claim is stated for purposes of Rule 12(b)(6). *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008) ("[W]hen faced with a jurisdictional issue that is intertwined with the merits of a claim, district courts must demand less in the way of jurisdictional proof than would be appropriate at a trial stage.") (internal quotations omitted); *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987); *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir.1985) ("The jurisdictional facts are often intertwined with the merits of a claim. For example, if a plaintiff's constitutional claim is found wanting . . . it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent. However, the courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12] subdivision b(6) or Rule 56.") (quoting 2 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 12.07 [2.-1] at 12–50 (1982)).

(2015)). The Bank argues that it did not have a duty to provide the rationale to Mr. Ruales as to why it closed his checking account. I agree that Mr. Ruales has not sufficiently alleged the existence of a duty and dismiss his negligence count under Fed. R. Civ. P. 12(b)(6) on this basis.

The facts and analysis of *Doe v. Bank of Am. Corp.*, 273 F. Supp. 3d 203, 206 (D.D.C. 2017), are comparable to the present case. In *Doe*, the plaintiff sued his former bank for negligence after it summarily closed his account without providing any reason for the closure. *Id.* The *Doe* plaintiff complained of damage to his reputation, "alleging that the abrupt and unexplained closing of his account may suggest to international corporations on whose boards he might serve, that he was engaged in illegal financial activities, such as money laundering, which he vehemently denie[d]." *Id.* The "only reason" the plaintiff filed the lawsuit was due to his bank's "adamant refusal to tell him the reasons why his account was closed." *Id.* at 207.

Like Mr. Ruales, the *Doe* plaintiff alleged that he had a longstanding relationship with his former bank, there were no prior problematic incidents, and there were no reasons for the bank to generate a SAR based on his account activity. *Id.* Nonetheless, the *Doe* plaintiff's account was closed without explanation, and the bank made "no effort to inform [Mr. Doe] of the accusations against [him] or investigate them." *Id.* In doing this, the *Doe* plaintiff's bank allegedly "violated its 'duty to act with reasonable care at all times . . . [b]y closing the accounts before affording [Mr. Doe] an opportunity to explain any alleged wrongdoing disclosed to the bank by federal authorities or other sources.'" *Id.* (quoting *Doe* Complaint). The *Doe* plaintiff sought a court order requiring his former bank to explain in writing why it closed his account

and also a monetary award to compensate him for reputational and business-related damages. *Id.* at 207-08.

The *Doe* court granted the bank defendant's motion to dismiss on Rule 12(b)(6) grounds. As to the negligence count, it held that no violation of a legally enforceable duty had been alleged:

> Essential to a successful negligence claim is the existence of a legally enforceable duty, which Plaintiffs allege is a duty to act with reasonable care that encompasses "a duty. . . to investigate" charges made against Mr. Doe and to "determine whether they were bona fide." Compl. ¶¶ 15, 20. . . . Plaintiffs provide no facts to support their assertion that reasonable commercial standards in any relevant state require banks to investigate totally external information that impedes their banking relationship or to provide customers an opportunity to respond to that information before a bank account may be closed, with prior notice, as here. Nor do Plaintiffs point to any industry standard requiring banks to provide reasons for the closure of an account.

*Id.* at 211.

I find this reasoning persuasive and adopt it here. Like the *Doe* plaintiff, Mr. Ruales does not point to any law or industry standard that requires the Bank to provide reasons for the closure of an account. In the absence of such a duty, Mr. Ruales has failed to state a claim for negligence. The motion to dismiss Count 1 is therefore granted.

### C. 42 U.S.C. § 1983 (Count 2)

Mr. Ruales has failed to state a claim under 42 U.S.C. § 1983 because the defendant is not alleged to have acted under color of state law.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: "(1) the conduct complained of must be 'committed by a person acting under color of state law'; and (2) this conduct must 'deprive[ ] a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993)); *accord Mitchell v. Mitchell*, 737 F. App'x 630, 631 (3d Cir. 2018) ("under Section 1983, a plaintiff

6

must show she was deprived of a federal constitutional or statutory right by a state actor."); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The state-action element of a Section 1983 claim requires that "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744 (1982). For the conduct to be "fairly attributable" to the State, 1) the deprivation must be caused by a) the exercise of some right or privilege created by the State or b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and 2) the defendant must be a person who may fairly be said to be a state actor, either because the person a) is a state official, b) acted together with or has obtained significant aid from state officials, or c) performed conduct otherwise chargeable to the State. *See id.* at 936-39.

"[A] private party can qualify as a state actor when 'he [or she] is a willful participant in joint action with the State or its agents,'" but Mr. Ruales has alleged no such facts here. *Clark*, 516 F. App'x at 99 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S. Ct. 183 (1980)). True, the Amended Complaint alleges that the Bank was subject to the supervision of the New Jersey Department of Banking and Insurance. (AC ¶¶ 14-17). However, merely being under the supervision of a state regulatory agency does not transform a private entity into a state actor. *Shine v. TD Bank Fin. Grp.*, No. 09-4377, 2010 WL 2771773, at *5 (D.N.J. July 12, 2010) ("[M]ere regulation of an entity by the government does not transform the entity into a state actor.") (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350, 95 S. Ct. 449 (1974)). That principle has been applied to regulated banks in particular. *Bailey v. Harleysville Nat'l Bank & Tr.*, 188 F. App'x 66, 68 (3d Cir. 2006) ("[B]anks have been found not to be state actors, despite [their] extensive regulation, even when their complained-of actions have been explicitly authorized by the state. . . . Thus, the Bank is not a state actor by virtue of its regulation by the government and participation in the federal reserve system and Federal Deposit Insurance Corporation."). To deem a regulated entity a state actor would broaden the scope of 1983 liability

beyond the limits of the statutory text and case law interpreting it. *See Lugar*, 457 U.S. at 937 ("[T]he party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.").

Defendant SSB is a private-sector entity. No facts are alleged to suggest that it was acting under color of state law, or as a willful participant in joint action with the State or its agents. *See James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 106 (3d Cir. 2006) ("To the extent [plaintiff] raises claims under § 1983 [against a credit union and its employees], none of the defendants is a state actor.").

Consequently, Mr. Ruales has failed to state a claim under Section 1983 and the motion to dismiss Count 2 is granted.[3]

---

[3] The jurisdictional allegations of the Amended Complaint state that the claims are "brought under Federal consumer financial law" and cite 12 U.S.C. § 5565(a)(1) as a basis for jurisdiction. (AC ¶ 18). That statute provides federal courts with subject matter jurisdiction over claims "brought under Federal consumer financial law." *Id.* The statutory definition of "Federal consumer financial law" includes "the provisions of this title, the enumerated consumer laws, the laws for which authorities are transferred under subtitles F and H, and any rule or order prescribed by the Bureau [of Consumer Financial Protection] under this title, an enumerated consumer law, or pursuant to the authorities transferred under subtitles F and H. The term does not include the Federal Trade Commission Act." 12 U.S.C. § 5481(14). The phrase "enumerated consumer laws" is defined to include a group of eighteen separate federal laws. *See* 12 U.S.C. § 5481(12).

Even a *pro se* complaint must provide a defendant with "fair notice of the claim and the grounds upon which it rests." *Erickson*, 551 U.S. at 127 (citing *Twombly*, 550 U.S. 544 (2007)). This complaint contains no count under federal consumer financial laws, and does not specify any such law. To the extent such a claim may have been intended, it is dismissed for failure to meet minimal pleading standards. *See Normela Upshaw v. United States Dep't of Educ.*, No. 17-00164, 2017 WL 7171525, at *5 (C.D. Cal. Sept. 18, 2017) ("Plaintiff broadly asserts violations of 'Federal Consumer Financial Law[s]'. . . . By failing to identify particular statutes, this claim fails to satisfy

## III. CONCLUSION

For the reasons stated in this Opinion, Defendant's motion to dismiss the Amended Complaint is granted on Rule 12(b)(6) grounds. Because this is an initial dismissal, I will order that it be entered without prejudice to the filing, within 30 days, of a properly supported motion to submit a second amended complaint. An appropriate Order follows.

Dated: January 9, 2019

HON. KEVIN MCNULTY, U.S.D.J.

---

the minimal notice pleading requirements of Federal Rule of Civil Procedure 8 and therefore must be dismissed.").

9