**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

**MIGUEL RUALES,**

        **Plaintiff,**

**v.**

**SPENCER SAVINGS BANK,**

        **Defendant.**

Civ. No. 18-9192 (KM) (MAH)

**OPINION & ORDER**

---

**KEVIN MCNULTY, U.S.D.J.:**

Miguel Ruales maintained a checking account with Spencer Savings Bank ("Spencer") for approximately six years. In August 2017 Ruales's account was closed by Spencer. Ruales claims that the account closure was motivated by national origin discrimination. Spencer now moves for summary judgment arguing that there are no disputed material facts, and it is entitled to judgment as a matter of law. For the reasons set forth below, Spencer's motion is **GRANTED**.

I.    **Background**[1]

---

[1]    For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "SAC" | = | Second Amended Complaint (DE 37) |
| "Def. Brf." | = | Memorandum of Law in Support of Spencer Saving Bank's renewed Motion for Summary Judgment (DE 112-2) |
| "Opp." | = | Memorandum of Law in Opposition to Spencer's Cross Motion for Summary Judgment (DE 113) |
| "DSOMF" | = | Defendant Spencer Saving Bank's statement of material facts (DE 112-1) |

Miguel Ruales opened a checking account with Spencer in August 2011. (DSOMF ¶ 1; SAC ¶ 1.) On August 8 or 9, 2017, Spencer notified Ruales that it would be closing his account effective September 9, 2017. (DSOMF ¶ 6; SAC ¶ 13.) Ruales asserts that Spencer refused to provide him with a reason for the account closure. (Opp. at 2.)[2] Ruales closed his account and withdrew his remaining balance on September 8, 2017, the day before the account closure was to have taken place. (DSOMF ¶ 7.)

For its part, Spencer states that it maintains software which monitors all accounts and transactions using an algorithm that brings irregular activity to Spencer's attention. (DSOMF ¶ 4.) Spencer states that "excessive use of bank checks" caused Ruales's account to be flagged and referred for review multiple times. (DSOMF ¶ 5.) Ruales has attached to his brief in opposition the deposition answers of Jane Rey (Spencer's President and Chief Operating Officer), Jose Guerrero (Spencer's Chairman of the Board and Chief Executive Officer), John C. Duncan (Spencer's Executive Vice President and Chief Lending Officer), as well as those of Spencer Employees, Vincent Spada, Allison Danchak and Elizabeth Perez-Serrano. (Opp., Exs. C–H.) In response to a question about why Ruales's account was closed, Rey, Guerrero and Duncan responded:

> Spencer was alerted to the activity with respect to plaintiff's account by a software program which monitors Spencer accounts for irregular activity. The decision to close Plaintiff's account was based on Spencer's determination that Plaintiff was using the account for purposes incompatible with a consumer checking account. Specifically, Spencer determined that Plaintiff appeared to be using the account to complete irregular business transactions. When questioned by Spencer branch personnel on various occasions, plaintiff gave inconsistent answers as to the nature of his business activities. Plaintiff had also purchased a significant number of bank

---

[2]   The pages in Ruales's opposition brief are not numbered, so all page numbers refer to the PDF page of DE 113.

checks which is indicative of use for purposes inconsistent with a consumer checking account . . .

(E.g., Opp. Ex. E, ¶ 20.) In past filings in this case, Ruales himself stated that he "was depositing large sums of money as his construction business was taking off." (DE 95 at 7.)

In response to a question asking who directed the closure of plaintiff's account, Rey, Guerrero, and Duncan responded consistently: A bank committee composed of Jane Rey, Allison Danchak, John Fitzpatrick, and John Duncan, (Opp., Ex. E, ¶ 18.) Ruales also attached to his motion the written deposition answers of Vincent Spada, Allison Danchak, and Elizabeth Perez-Serrano. Spada, whose role is not clear from the deposition, was asked only one question: who instructed him to close Plaintiff's account? Spada responded that "[t]o the best of my recollection, it was Michael Islinger, in the retail banking department." (*Id.*, Ex. F.) Allison Danchak, in contrast, stated that she remembered it was Spada, as Cranston branch manager, who would have investigated Ruales's use of bank checks. (*Id.*, Ex. G ¶ 3.) Danchak also stated that it was Elizabeth Perez-Serrano who provided the information on the account to the bank committee. (*Id.* ¶ 8.) Perez-Serrano, however, denied referring Ruales's account to the committee, but does state that she informed the committee that Ruales's account used bank checks with an unusual frequency, and that it was the bank committee that made the decision to close the account. (*Id.*, Ex. H ¶ 3, 9.)

Ruales asserts that the account closure caused him reputational and financial harm, and asserts claims against Spencer for negligence, violation of 42 U.S.C. § 1981, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. In June and July of 2021 the parties cross-moved for summary judgment. (DE 95, 99.) In his initial motion for summary judgment, Ruales requested that the affidavits of Rey and Danchak be struck. I denied the request as to Rey (DE 101 at 2–3) and referred the request to strike Danchak's affidavit to Magistrate Judge Hammer (*id.* at 3–4). Judge Hammer denied the request to strike Danchak's affidavit but allowed Ruales to propound written

discovery on Danchak. (DE 102; Opp., Ex. G.) Because of the additional time required to propound the written discovery, I administratively terminated the cross-motions for summary judgment and allowed the parties to renew the motions, if they wished, after discovery was completed. (DE 104.) On January 21, 2022, Judge Hammer allowed Ruales to propound interrogatories on Elizabeth Perez-Serrano. (DE 109.) On March 1, 2022, Judge Hammer determined that the additional discovery had been completed and that the parties could file new motions for summary judgment. (DE 111.) Thereafter, Spencer filed for summary judgment on April 1, and Ruales decided not to file a new motion for summary judgment but instead filed a brief in opposition to Spencer's motion. (DE 112; Opp. at 2.)[3]

In his opposition to Spencer's motion, Ruales argues that summary judgment should be denied because there are disputed issues of material fact and that the affidavits of Danchak and Rey should be struck. (Opp. at 6–11.) I find that Ruales's motions to strike the affidavits have already been denied, and that because Ruales has failed to identify a disputed issue of material fact, summary judgment must be granted in favor of Spencer

## II.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

---

[3]     In addition, a document labeled "Reply Brief" was filed by Spencer. (DE 114.) The document, however, appears to be a copy of Ruales's Reply Brief in Support of his Motion for Leave to file a Second Amended Complaint, DE 30, dated May 6, 2019. I assume this document was filed in error and therefore disregard it.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). In that respect, the Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party

"fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Ruales is proceeding pro se. A pro se litigant is ordinarily entitled to considerable leeway. *See Niblack v. Murray*, No. CV126910MASTJB, 2016 WL 4086775, at *1 n. 1 (D.N.J. July 29, 2016) (citing *Pratt v. Port Auth. of N. Y. & N.J.*, 563 Fed.Appx. 132, 134 (3d Cir. 2014) ("[B]ecause [the plaintiff] is proceeding pro se, we will construe his brief liberally."); *Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant")). *See generally Haines v. Kerner*, 404 U.S. 519 (1972).

### III.   Discussion

Spencer moves for summary judgment on Ruales's claims of negligence, 42 U.S.C. § 1981, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing. Its motion is **GRANTED**.

### a.   Section 1983 Claim

Ruales's brief addresses a Section 1983 claim. (Opp. at 3.) However, this claim was previously dismissed because Spencer is not a state actor. (DE 20, 21.) Ruales did not assert a Section 1983 claim in his second amended complaint, which is the operative pleading. (DE 37.) Insofar as Ruales wishes to maintain his Section 1983 claim, I grant summary judgment in favor of Spencer on this claim.

### b.   Negligence

The second amended complaint includes a claim for negligence asserting that Spencer should have contacted Ruales and investigated the matter before closing the account. To prevail on a negligence claim, Ruales must prove: (1) the defendant owed plaintiff a duty; (2) there was a breach of that duty; and (3) the breach proximately caused the injury. *V.C. by Costello v. Target Corp.*, 454

F. Supp. 3d 415, 423 (D.N.J. 2020) (citing *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990)).[4]

In a prior opinion, I dismissed the negligence claim contained in Ruales's first amended complaint for failure to allege a duty. (DE 29.) I held that Ruales had not pointed to any law or industry standard requiring the bank to provide reasons for the closure of an account. Ruales's second amended complaint still does not point to such a duty but invokes the general common law duty of care.

Spencer responds that it violated no general duty of care. It points to deposition testimony stating that the decision to close the account was made after deliberation by Spencer's senior management, because the account was flagged by its monitoring software multiple times. (Def. Brf. at 13-14.) Ruales has not offered any evidence which refutes this. Further, the agreement entered into when Ruales signed the account card provides that Spencer "may also close this account upon reasonable notice to you and tender of the account balance personally or by mail." (DSOMF ¶ 3.) It is not "negligent" for a party to an agreement to act in a manner provided for in that agreement. It is undisputed that Spencer provided Ruales with 30-days' notice before the scheduled account closure. Ruales presents no argument in his brief in opposition in support of his negligence claim, other than claiming that the decision to close his account was baseless because the bank checks were used at Sears. (Opp. at 10.)

Ruales has provided no evidence from which a reasonable juror could conclude that Spencer behaved negligently and therefore could not meet his burden at trial. *Celotex*, 477 U.S. at 322. I therefore grant Spencer's motion for summary judgment on this claim. *See Doe v. Bank of Am. Corp.*, 273 F. Supp.

---

[4]    Neither party explicitly address which state's law should apply. Ruales resides in New Jersey and Spencer is a New Jersey corporation with its principal place of business in New Jersey. (SAC ¶ 9, 10.) Both parties appear to apply New Jersey law. I do the same.

3d 203, 210 (D.D.C. 2017) (dismissing negligence claim based on materially similar facts).

### c.    Section 1981 Claim

Ruales's second amended complaint asserts that Spencer discriminated against him on the basis of his national origin in violation of 42 U.S.C. § 1981. (SAC ¶ 64.) To state a claim under § 1981, a plaintiff must allege: (1) that he was a member of a racial minority; (2) that the defendant intentionally discriminated against the plaintiff on the basis of race; and (3) "discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Varughese v. Robert Wood Johnson Med. Sch.*, No. CV 16-02828, 2017 WL 4270523, at *6 (D.N.J. Sept. 26, 2017) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). A § 1981 plaintiff "bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of African-Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Ruales has not provided any evidence of national origin-based discrimination. In contrast, Spencer has provided positive evidence that the decision to close Ruales's account was not based on national origin.

In his second amended complaint, Ruales alleges that an employee, Barbara Bornstein, told him his account was closed because he was Hispanic. (SAC ¶ 66.) Bornstein, however, is not referred to in Ruales's brief in opposition.[5]

---

[5]    Spencer attached Bornstein's deposition to its motion for summary judgment. (Def. Brf., Appx. 2 ("Bornstein Dep.")) Bornstein testified that she spoke with Ruales once when he approached her with questions about Spencer. (Bornstein Dep.at 14:6-15:12.) She stated that her supervisor, Katie Jordan, was a "prejudiced manager," but clarified that she treated people differently based on the amount of money in their account. (Bornstein Dep. at 18:13–20.) Bornstein was asked if it mattered to Jordan "whether you were white, black or Hispanic?" and Bornstein responded "no." (Bornstein Dep. at 19:17–19.) She then testified that the differential treatment was limited to Jordan. (Bornstein Dep. at 20:5–7.) Jordan was fired from Spencer in September 2007. (DSOMF ¶ 15.) Spencer did not send Ruales the letter informing him his account would be closed until August 2017. (SAC ¶ 13.) Even had Jordan been employed at the time the decision to close Ruales's account was made, Ruales has not

8

In his brief in opposition, Ruales claims that this case "presents a classic factual dispute" in which Spencer claims Ruales's account was closed because of his use of bank checks, while Ruales claims his account was closed because of his national origin. The facts in the record relating to the account closure, however, are all on Spencer's side. The allegedly disputed facts that Ruales points to involve what he claims are inconsistencies in the testimony about who was responsible for closing the account. (Opp. at 5.) It is clear from the testimony that it was a bank committee composed of Rey, Danchak, Fitzpatrick, and Duncan that made the decision to close the account. It is true that Spada, on the other hand, stated that he believed the decision was made by an employee named Michael Islinger. (Opp. at 7.) It is not clear what basis Spada had for the statement.[6] Regardless, Ruales has not provided any evidence which suggests that that dispute is material. The material issue is not who made the decision to close Ruales's account but whether any of the decisionmakers discriminated against Ruales on the basis of his national origin. Ruales has not presented a single fact to show that any of the

---

provided any evidence that Jordan was involved with that decision or that she was prejudiced against Hispanic customers. A reasonable juror could not find racial discrimination based on this evidence.

In his Second Amended Complaint. Ruales also argued that there is a pattern of discrimination at Spencer. (SAC ¶ 23–27.) Ruales cites to a suit brought by Bornstein against Spencer alleging discrimination. That matter was dismissed by the Administrative Law Judge, a ruling adopted by the Director of the New Jersey Division on Civil Rights. *Bornstein v. Spencer Savings Bank*, DCR EB-21WB-49983, Administrative Action Findings, Determination, and Order (Aug. 10, 2007), available at https://www.nj.gov/oag/dcr/downloads/orders/bornstein-order-8-10-07.pdf. This ruling is, if anything, evidence that the bank did not discriminate. Ruales has not provided any other claims or instances of discrimination in support of his "pattern" allegation.

[6]     It is likely that Spada's answer reflected the unclear nature of the question. Spada's interrogatory asked "Do you recall the specific individual(s) or member(s) of retail services who instructed you to close Plaintiff's account? If so, please provide the identity of that person or persons." (Opp., Ex. F.) Thus, Spada was not asked who made the decision to close the account, but merely who instructed him to close the account. This answer is entirely consistent with Islinger passing along the committee's decision to Spada so that Spada could execute the account closure.

decisionmakers at Spencer harbored, or acted upon, any bias toward him on the basis of his national origin. Because Ruales has not provided any evidence from which a reasonable juror could conclude that Spencer's actions were motivated by race or national origin, his § 1981 claim fails. Spencer's motion for summary judgment is therefore granted as to that claim.

### d.    Breach of Fiduciary Duty

Ruales also asserts a claim for breach of fiduciary duty.

Whether a fiduciary duty exists is a question of law. *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 704 A.2d 38, 43 (N.J. Super. Ct. App. Div. 1997). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 150 N.J. 550, 696 A.2d 697, 704 (N.J. 1997). Traditional fiduciary relationships include those between trustee and beneficiary, guardian and ward, agent and principal, attorney and client, corporate director and shareholder, and the members of a partnership. *Avon Bros. v. Tom Martin Constr. Co.*, 2000 WL 34241102, at *4, 2000 N.J. Super. Unpub. LEXIS 1, at *11 (App. Div. Aug. 30, 2000). "[T]he dominant theme of the case law . . . is that fiduciary relationships arise where one party has the power and opportunity to take advantage of the other, because of that other's susceptibility or vulnerability." *Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.*, 696 F. Supp. 57, 73 (D. Del. 1988).

Generally, "there is no presumed fiduciary relationship between a bank and its customer." *Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790 (RBK/KMW), 2020 WL 241332, at *11 (D.N.J. Jan. 16, 2020) (quoting *United Jersey Bank*, 704 A.2d at 44) (discussing the duty in the context of a creditor/lender relationship); *Estate of Paley v. Bank of Am.*, No. A-4391-07T3, 2011 N.J. Super. Unpub. LEXIS 1055, at *33 (Super. Ct. App. Div. Apr. 29, 2011) (explaining that a bank's relationship with a depositor is one of debtor-creditor, which is not fiduciary in character). "When a bank accepts a deposit from a depositor for either a checking or savings account, a creditor-debtor

relationship typically is established. The virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty." *Meglino v. Wells Fargo Bank, N.A.*, Nos. A-0443-12T3, A-3254-12T3, 2014 N.J. Super. Unpub. LEXIS 2163, at *24-25 (Super. Ct. App. Div. Sep. 4, 2014). In *United Jersey Bank v. Kensey*, "the Appellate Division of the New Jersey Superior Court articulated exceptions to the general rule that 'creditor-debtor relationships rarely give rise to a fiduciary duty.' Relying on the Restatement (Second) of Torts § 551, the Appellate Division explained that a duty may arise when a lender commits gross acts of misconduct or deceit, or under the 'special circumstance' where a lender 'knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on the bank . . . to counsel and inform him.'" *Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 149 (3d Cir. 2017) (citing *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553, 704 A.2d 38, 44 (Super. Ct. App. Div. 1997)). There is nothing about the relationship between Spencer and Ruales which indicates a fiduciary relationship.

Even if Spencer did owe a general fiduciary duty, which has not been established, Spencer asserts that it would not encompass any duty to maintain an account for a customer. (Def. Brf. at 14-19.) In fact, Spencer points out that such a duty would run counter to, for example, the many state and federal banking regulations which require a bank to monitor accounts for suspicious activity. I agree with Spencer that Spencer had no obligation to maintain an account for Ruales. No funds were ever in jeopardy. Even if the two were in a fiduciary relationship, closing Ruales's account after reasonable notice would not constitute a breach of a fiduciary duty. Spencer's motion is therefore granted as to the fiduciary duty claim.

### e.    Breach of Covenant of Good Faith and Fair Dealing

Ruales also brings a claim for breach of the covenant of good faith and fair dealing.

"Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." [*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 245, 773 A.2d 1121 (2001)] (quoting Restatement (Second) of Contracts, *supra*, § 205 comment a). The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing "anything which will have the effect of destroying or injuring the right of the other party to receive" the benefits of the contract. *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130, 207 A.2d 522 (1965) (internal quotations omitted); *see also Wade v. Kessler Institute*, 172 N.J. 327, 340, 798 A.2d 1251 (2002) (same). Proof of "bad motive or intention" is vital to an action for breach of the covenant. *Wilson*, *supra*, 168 N.J. at 251, 773 A.2d 1121. The party claiming a breach of the covenant of good faith and fair dealing "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Williston*, *supra*, § 63:22, at 513-14 (footnotes omitted); *see also Wilson*, *supra*, 168 N.J. at 251, 773 A.2d 1121; [*Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575 (1997)]

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210 (N.J. 2005).

Ruales has not presented any evidence that Spencer acted in bad faith or denied Ruales the benefit of their contract. In fact, the agreement entered into when Ruales signed the account card states that Spencer "may also close this account upon reasonable notice to you and tender of the account balance personally or by mail." (DSOMF ¶ 3.) Spencer has presented evidence that it acted in good faith, in response to software-flagged behavior. Ruales has not provided facts from which a reasonable juror could conclude that Spencer breached the covenant of good faith and fair dealing. Spencer's motion for summary judgment is therefore granted as to that claim.

**IV.   Conclusion**

For the reasons stated above, Spencer's motion for summary judgment is **GRANTED**. A separate order will issue.

Dated: June 1, 2022

/s/ Kevin McNulty

_____

Kevin McNulty
United States District Judge